UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| RUDOLPH PERKINS | : | DOCKET NO. 08-CV-1906 |
| VS. | : | JUDGE TRIMBLE |
| TERRY TERRELL, ET AL. | : | MAGISTRATE JUDGE KAY |

REPORT AND RECCOMENDATION

On September 9, 2010, defendants filed a motion for summary judgment.  Doc. 27.  For

the reasons set forth below, defendants' motion is DENIED.

Facts

This motion arises from the *pro se* civil rights complaint (42 U.S.C. § 1983) of plaintiff

Rudolph Perkins, filed *in forma pauperis* on December 1, 2008 (deficiency corrected and

complaint actually filed on May 6, 2009).  Docs. 1, 8.  The gravamen of respondent's §1983

complaint is that petitioners have subjected him to cruel and unusual punishment in violation of

the Eighth Amendment,[1] made applicable to the States by the Fourteenth Amendment.  *See*

*Robinson v. California*, 370 U.S. 660 (1962).  Plaintiff is an inmate in the custody of the

Louisiana Department of Public Safety and Corrections and is incarcerated at Allen Correctional

Center (ACC) in Kinder, Louisiana.  Doc. 8.  He complains about conditions of his confinement

at ACC, particularly that he is exposed to environmental tobacco smoke (ETS).  Doc. 12.

Plaintiff is seeking compensatory damages, punitive damages, and various injunctive relief,

including a transfer to Dixon Correctional Institute, immediate medical treatment, establishment

---

[1] The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

of non-smoking dormitories at ACC, and declaratory relief.  *Id.*

On January 28, 2008, plaintiff was placed in the "general population" area at ACC.  Doc. 29, p. 6.  Plaintiff's dormitory in the general population area housed approximately thirty smokers and fourteen non-smokers at that time.  *Id.*  ACC had in place at those times a policy providing for restrictions on inmate smoking which prohibited smoking in the bed areas or TV rooms at any time from January 28, 2008 to present, and anywhere indoors from August 15, 2009 to present.[2]  Doc. 27, att. 1, p. 8.  On February 14, 2008, plaintiff notified Daniel Granger, the Correctional Captain in charge of plaintiff's unit at ACC [doc. 12, p. 4], that he suffered from breathing complications related to a congestive heart failure.  Doc. 29, p. 3.  The plaintiff also complained of severe headaches, nausea, and dizziness.  *Id.* at p. 3-4.  Plaintiff alleged that these ailments were a direct "result of the dormitories poor ventilation system, second and third hand smoke ashes pollution circulating the atmosphere," and cigarette butts and homemade ashtrays in the various areas of the dormitory and inside of the enclosed television room.  *Id.* at p. 3-4, 6.  In response to plaintiff's complaints, Mr. Granger allegedly stated: "'If the plaintiff could not handle the smoke he should hot have come to prison to wine like a baby . . . .[']"  *Id.* at p. 5.  Plaintiff next filed an administrative complaint with ACC, which was denied.  *See* doc. 1.

## Law and Analysis

### A.    Legal Standard

#### 1.    Summary Judgment

Summary judgment should be granted when the movant demonstrates that no issue of material fact exists and that the movant is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56.  It is the movant's initial burden to inform the court of the basis for its motion and to

---

[2] Probably not coincidentally, Louisiana's Smoke Free Air Act (2007), LA. REV. STAT. § 40:1300.252, *et seq.*, became effective August 15, 2009.  The statute prohibits smoking in all public places and prohibits smoking in any state, local, or private correctional facility.  LA. REV. STAT. § 40:1300.255(14).

-3-

identify those portions of the pleadings, depositions, and answers to interrogatories, admissions

on file and affidavits, if any, that it believes demonstrate the absence of a genuine issue of

material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A fact is material if it "might

affect the outcome of the suit under governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986).

Once a proper motion has been made, "the nonmovant must go beyond the pleadings and

designate specific facts showing that there is a genuine issue for trial."  *Little v. Liquid Air Corp.*,

37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325).  When a case is presented

for judgment as a matter of law, courts must view the facts and draw reasonable inferences "'in

the light most favorable to the party opposing the [summary judgment] motion.'"  *Scott v.

Harris*, 550 U.S. 372, 378 (2007) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655

(1962) (per curiam)).  A genuine issue of fact exists "if the evidence is such that a reasonable

jury could return a verdict for the non-moving party."  *Anderson*, 477 U.S. at 248.

2.      42 U.S.C. § 1983

Title 42 U.S.C. § 1983 establishes a civil action for the deprivation of rights, privileges,

or immunities secured by the Constitution and laws of the United States, and "may be brought

against state actors to enforce" those mandates.  *Gonzaga University v. Doe*, 536 U.S. 273, 279

(2002).    However, "unless Congress 'speak[s] with a clear voice,' and manifests an

'unambiguous' intent to confer individual rights," a § 1983 claim will fall short.  *Id.* at 280

(quoting *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 17 (1981)).

Here, plaintiff pleads that ACC guards and officials, as agents of the state, violated the

Eighth and Fourteenth Amendments to the Constitution.[3]  Doc. 12, p. 2.  Thus, in order to state a

_____

[3] The plaintiff also pleads an "invasion of his legal rights and a violation of duty by which negligence and special
damage accrues to the plaintiff."  Doc. 12, p. 2.  Although it is the case that "a *pro se* complaint, 'however inartfully

claim under § 1983, the plaintiff must show "(1) a violation of a constitutional right, and (2) that

the alleged violation was committed by a person acting under color of state law."  *Holmes v.

Crosby,* 418 F.3d 1256, 1258 (11th Cir. 2005).

Here, because there is no dispute that all defendants were "persons acting under the color

of state law," the court need only decide whether a constitutional right was violated.

### B.      Eighth Amendment Claim

Plaintiff's complaint alleges that Defendants violated the Eighth Amendment by creating

conditions of confinement which endangered his health.  In order to state a colorable claim for

the denial of medical care under the Eighth Amendment, an inmate must allege acts or omissions

"sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Estelle v.

Gamble*, 429 U.S. 97, 106 (1976); *see also id.* at 105 ("Regardless of how evidenced, deliberate

indifference to a prisoner's serious illness or injury states a cause of action under § 1983.").  As

announced by the Fifth Circuit, this requires that an inmate "would have to establish 'first, that

the deprivation alleged was sufficiently serious (i.e., an official's act or omission must have

resulted in the denial of the minimal civilized measure of life's necessities); and second, that the

prison official possessed a sufficiently culpable state of mind.'"  *Burleson v. Texas Dep't of

Criminal Justice*, 393 F.3d 577, 589 (5th Cir. 2004) (quoting *Herman v. Holiday,* 238 F.3d 660,

664 (5th Cir. 2001)).  These are often referred to as the "objective" and "subjective" elements of

the *Helling* test, respectively, and both are "necessary to prove an Eighth Amendment violation."

*Helling v. McKinney*, 509 U.S. 25, 35 (1993).

---

pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers,'" *Estelle v. Gamble*,
429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)), the court has a difficult time
unraveling this pleading.  At any rate, if it is a claim for simple negligence alone, it is well established that it would
not be redressable under § 1983.  *See Daniels v. Williams*, 474 U.S. 327, 335 (1986); *see also generally Davidson v.
Cannon*, 474 U.S. 344 (1986); *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994); *Wright v. Collins*, 766 F.2d.
841, 849 (4th Cir. 1985); *Manuel v. Guy*, No. 08-0069, 2008 WL 4716874, *2 (N.D. Ind. Oct. 20, 2008).

1.      Objective Element

As to the first prong of the test – the objective element – the plaintiff "must show that he himself is being exposed to unreasonably high levels of ETS."  *Id.*  This can be established by showing "that the risk of which he complains is not one that today's society chooses to tolerate." *Id.* at 36.

Necessarily, as the today of today differs from the today of yesteryear, the standards under this test are constantly evolving.  A recent decision by this court, however, has shed some much needed light on the subject since *Helling*.  In *Hicks v. Corrections Corp. of America*, No. 08-0687, 2009 WL 2969768 (W.D. La. Sept. 11, 2009), a prisoner incarcerated in the Winn Correctional Center ("WCC") filed a § 1983 suit against a number of WCC guards and officials, alleging an aggravation of preexisting bronchial asthma and high blood pressure conditions due to contact with ETS.[4]  *Id.* at *2, *8.  Plaintiff therein was placed in a "smoking tier" for ten months, and subsequently transferred to a "'fake non-smoking tier.'"  *Id.*  The plaintiff claimed that although smoking was technically not allowed in the "non-smoking tier," WCC officials did not "screen the smoking habits of inmates before placing them on the 'non-smoking tiers,' [did] not monitor the 'non-smoking tiers' for smoking, search for cigarettes, or do anything if an inmate is seen smoking, and that several inmates on those tiers smoke 24 hours a day."  *Id.*

Looking to the objective element, the *Hicks* court adopted the scientific evidence in a 2006 Surgeon General's Report finding "no safe level of or exposure to second hand smoke . . . as meeting the objective component of *Helling*, as well as *Helling*'s requirement of a showing that society considers the risk to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk, as also set forth in the Surgeon General's report." *Id.* at *6; *see also Sivori v. Epps*, No. 07-0079, 2009 WL 799463, *7 (S.D. Miss. Mar. 24, 2009)

---

[4] The plaintiff's complete medical records were not in the record.  *Id.* at *8, fn. 8.

(using the Surgeon General's Report to satisfy the plaintiff's burden of proof in a similar case). Applying the heightened standard as adopted vis-à-vis the Surgeon General's Report, the court concluded that allegations of prolonged exposure to ETS would suffice to satisfy the objective element of the *Helling* test. *Id.* (citing *Murrell v. Chandler*, 277 Fed.Appx. 341 (5th Cir. 2008); *Murrell v. Casterline*, 307 Fed.Appx. 778 (5th Cir. 2008); *White v. King*, No. 07-0305, 2008 WL 5272092 (S.D. Miss. Dec. 16, 2008); *Wansley v. King*, No. 07-83KS-MTP, 2008 WL 4066711 (S.D. Miss. Aug. 27, 2008); *Ware v. Batson*, No. 07-1705, 2008 WL 2773604 (W.D. La. Jul. 17, 2008)).

Here, plaintiff claims to have been subject to ETS from January 28, 2008 to present. *See* doc. 29. Although the level of ETS that the plaintiff was exposed to at these times is disputed,[5] it is conceded that at some point the plaintiff was exposed to some level of ETS. *See* doc. 27, att. 1, pp. 2-4. Thus, since the objective standard holds that there is "no safe level of or exposure to second hand smoke," it appears that almost any unwanted exposure to ETS would be enough to defeat summary judgment as to the objective element. *See Murrell v. Chandler*, 109 Fed.Appx. 700, 701 (5th Cir. 2004) (holding that a prisoner can state an Eighth Amendment claim if he is exposed to ETS, even if the ETS had not yet harmed him). Further, when viewed in a light most favorable to the nonmoving party, the facts at bar are strikingly similar to *Hicks*. Thus, the court holds that the plaintiff has met his burden of proof as to the objective element of the *Helling* test.

> 2.      Subjective Element

As to the second prong of the test – the subjective element – the Supreme Court has established that only "deliberate indifference to serious medical needs of prisoners" violates the

---

[5] Specifically, defendant claims that an ACC policy providing for restrictions on inmate smoking prevented the plaintiff from being exposed to ETS in the bed areas or TV rooms at any time from January 28, 2008 to present, and anywhere indoors from August 2009 to present. Doc. 27, att. 1, p. 8. Plaintiff, on the other hand, claims that poor ventilation allowed ETS exposure from January 28, 2008 to present, and that, at all times, ACC's smoking policies – inside and out – have not been enforced. *See* doc. 29.

Eighth Amendment.[6]  *Estelle*, 429 U.S. at 104; *see also Wilson v. Seiter*, 501 U.S. 294, 303

(1991) (holding that "it is appropriate to apply the 'deliberate indifference' standard articulated

in *Estelle*" to suits involving "inhuman conditions of confinement, failure to attend [a prisoner's]

medical needs, or a combination of both . . . ."). Applied specifically to ETS, a plaintiff may

state a cause of action under the Eighth Amendment when prison officials "have, with deliberate

indifference, exposed him to levels of ETS that pose an unreasonable risk of serious damage to

his future health." *Helling*, 429 U.S. at 35. The existence of deliberate indifference to a prisoner

can be inferred from the fact that the risk of harm is obvious or that "a prison official refused to

treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar

conduct that would clearly evince a wanton disregard for any serious medical needs." *Hicks*,

2009 WL 2969768, at *7 (citing *Hope v. Pelzer*, 536 U.S. 730, 737-38 (2002) and *Easter v.

Powell*, 467 F.3d 459, 464 (5th Cir. 2006)). Courts should consider the following factors in

evaluating deliberate indifference to ETS: "the adoption of a smoking policy; the administration

of that policy; and 'the *realities* of prison administration.'" *Callicutt v. Anderson*, 48 Fed.Appx.

916, 916 (5th Cir. 2002) (emphasis in original) (quoting *Helling*, 509 U.S. at 36-37).

　　　Here, defendants assert that because ACC had a smoking policy in place from January

28, 2008 to present, "plaintiff could not have been exposed to any second-hand or third-hand

smoke in the bed areas or TV room." Doc. 27, att. 1, p. 8. Likewise, defendants claim, because

smoking was prohibited in any indoor area from August 15th, 2009 onward, plaintiff cannot

prove the subjective element of the *Helling* test. *Id.* at p. 8-9. Defendants argue that even if

plaintiff's claims of inadequate enforcement of the smoking policies were true, the claims

amount only to mere negligence, not the "deliberate indifference" necessary to assert a § 1983

---

[6] Plaintiff was informed of this rule earlier in the proceedings as well. *See* doc. 9 (advising plaintiff that punitive damages can be awarded under § 1983 only if official conduct is motivated by "evil intent" or demonstrates "reckless or callous disregard for a constitutional right")).

claim.  *Id.* at p. 9.  Defendants cite to two cases in support of this argument, one out of Michigan

and one out of Arizona.  *See id.* at p. 9 (citing *Brown v. Michigan*, No. 09-12975, 2009 WL

2750949, *2 (E.D. Mich. Aug. 26, 2009) and *Thomas v. Baca*, No. 04-1493, 2006 WL 2547321,

*7 (D. Ariz. Aug. 31, 2006)).  In making the argument that the mere existence of a smoking

policy categorically defends against a § 1983 attack, defendants ignore a surplus of Fifth Circuit

cases that have found the existence of "deliberate indifference" when a prisoner is exposed to

ETS despite the existence of a smoking policy.

       In *Murrell v. Chandler*, for example, the plaintiff prisoner offered a sworn declaration

that included the following summary judgment evidence: that he was assigned to a non-smoking

unit; that he was exposed to ETS in the housing unit and at the factory where he worked; that he

often held a wet towel over his face in order to breathe; that he advised the defendants that the no

smoking policy was not being enforced; and that he was having serious health problems that

included migraine headaches and respiratory problems.  227 Fed.Appx. 341, 343 (5th Cir. 2008).

In analyzing the subjective prong of the *Helling* test, the district court held that because a prison

policy prohibited smoking in the plaintiff's unit and because the plaintiff's "complaints to

officials regarding smoking were generalized complaints of his alleged exposure to ETS, not

specific complaints identifying who was violating the policy such as to allow prison officials to

take disciplinary action against any individual violators," the defendant's motion for summary

judgment against the plaintiff's § 1983 claim should be granted.  *Murrell v. Chandler*, No. 01-

0184, 2007 WL 869568, *6 (E.D. Tex. Mar. 21, 2007).  On appeal, however, the Fifth Circuit

reversed the district court's ruling, and held that the evidence offered by the plaintiff "create[d]

genuine issues of material fact regarding whether . . . the defendants were subjectively

deliberately indifferent to [the plaintiff's] plight."  *Murrell*, 227 Fed.Appx. at 343.

Again, in *Hicks* a smoking policy was in place that restricted smoking in the non-smoking tier.  2009 WL 2969768, at *8.  There, defendants alleged that because a smoking policy was in place, defendants could not act with "deliberate indifference" as to the plaintiff's exposure to ETS.  *See id.* at * 10 (noting that defendants "rel[ied] on their arguments as to . . . the prison's policies" to refute the plaintiff's evidence of deliberate indifference).  The existence of a smoking policy was not denied by the plaintiff, but he did offer an affidavit of another inmate stating that residents on the non-smoking "smoke freely on a daily basis, there are no shake-downs for tobacco, and no attempt is made to enforce the non-smoking rule."  *Id.* at *8, *14.  The plaintiff also asserted that defendants "deliberately ignored evidence of tobacco products on the non-smoking tier . . . (such as cigarette butts on the floor) and allowed the inmates there to smoke freely."  *Id.* at 11.  The court held that "the failure of [defendants] to implement a no-smoking policy at WCC in 2007, 2008, and 2009 is evidence of deliberate indifference to the health and safety to all who live and work within WCC, as well as the serious medical needs of those such as [the plaintiff], whose health problems are aggravated by second hand smoke."  *Id.* at 9.  The court further held that "deliberately ignoring a prisoner's complaints of the effects [that] constant exposure to second-hand smoke is having on [the plaintiff's preexisting conditions] is also deliberate indifference."  *Id.*  The defendants' motion for summary judgment was accordingly denied as to the plaintiff's Eighth Amendment claim.[7]  *Id.* at *13.

Similarly, in *Sivori* the plaintiff was incarcerated in the South Mississippi Correctional Institution ("SMCI") and claimed that he was exposed unwanted ETS.  2009 WL 799463, at *1.  Although there was a smoking policy in place, there was testimony that that the policies were not being enforced.  *Id.* at 2, 7.  Specifically, one witness testified that although there were "no smoking" signs in the plaintiff's housing units, inmates nonetheless smoked outside of the

_____

[7] At least with regard to some of the parties.  *See id.* at 13.

designated areas.  *Id.* at \*8.  Another witness testified that the designated "smoking area was a 'figment of someone's imagination' because both inmates and correctional officers smoked everywhere throughout the unit."  *Id.*  Defendants, on the other hand, offered no evidence that that offenders who violated the smoking policy were punished or that any action was taken as to the plaintiff's complaints regarding the second-hand smoke.  *Id.*  Thus, the court found for the plaintiff on his Eighth Amendment claim, holding that the non-enforcement of SCMI's smoking policy established a "policy, custom or practice" of maintaining "'its official policy with deliberate indifference to a constitutionally protected right.'"  *Id.* (quoting *Lawson v. Dallas County*, 286 F.3d 257, 264 (5th Cir. 2002)).

With the facts viewed in a light most favorable to the petitioner, as they must be, the acts and/or omissions of defendants create a question of fact as the "deliberate indifference" necessary to establish an Eighth Amendment claim under § 1983.  *See Hicks*, 2009 WL 2969768, at \*15 (noting that the fact that a smoking ban would have to be adopted by August 15, 2009 pursuant to LA. REV. STAT. § 40:1300.256(12); that there was a general health risk to all inmates from exposure to ETS pursuant to *Helling* and the Surgeon General's 2006 Report; and the specific health problems suffered by the plaintiff from exposure to ETS tended "to indicate deliberate indifference to [the plaintiff's] serious medical needs").  Further, as the court noted in *Sivori*, the subjective element of the *Helling* test is extremely fact-specific.  2009 WL 799463, at \*8, fn.13.  Therefore, a motion for summary judgment has a very high bar to meet.  At this point, the court concludes that the plaintiff has pressed enough evidence – and that that evidence presented is so similar to other cases that have defeated summary judgment in similar situations – that he deserves at the least an opportunity to present his evidence to a trier of fact.  *See id.*

## Conclusion

At this stage, the court concludes that Mr. Perkins has offered enough evidence to send the issue to a jury.  It will be up to the jury to determine whether Mr. Perkins has met both the objective and subjective elements of the *Helling* test.  For the reasons stated herein, it is ORDERED that defendants' motion for summary judgment [doc. 27] be DENIED.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, on December 6, 2010.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE