UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **RUDOLPH PERKINS** | : | **CIVIL ACTION NO. 2:08-cv-1906** |
| **VS.** | : | **JUDGE TRIMBLE** |
| **TERRY TERRELL, ET AL** | : | **MAGISTRATE JUDGE KAY** |

## REPORT AND RECOMMENDATION

Before the court is the second motion for summary judgment, [doc. 69], filed by defendants Terry Terrell, Wayne Calabrese, and Daniel Granger (collectively, "defendants"). For the following reasons, **IT IS RECOMMENDED that** the motion be **DENIED IN PART AND GRANTED IN PART.**

### I. BACKGROUND

Plaintiff Rudolph Perkins ("plaintiff") is an inmate in the custody of the Louisiana Department of Public Safety and Corrections, and he is incarcerated at Allen Correctional Center ("ACC") in Kinder, Louisiana. Doc. 30, p. 1. Defendant Terry Terrell is the Warden of ACC. Doc. 69, att. 2, p. 1. Defendant Wayne Calabrese is the former Vice Chairman, President, and Chief Operating Officer of the GEO Group, Inc., the private entity that operates ACC. *Id.* Defendant Daniel Granger is an ACC Housing Unit Captain. *Id.*

Plaintiff's *pro se* civil rights complaint alleges that he is exposed to high levels of environmental tobacco smoke ("ETS") at ACC and that such exposure constitutes cruel and unusual punishment in violation of the Eighth Amendment. Doc. 30, p. 1. Plaintiff therefore argues that defendants are liable under 42 U.S.C. § 1983 for compensatory and punitive damages. *Id.* at 1–2. He also prays for various forms of injunctive relief including transfer to another facility. *Id.*

In their first motion for summary judgment, defendants argued that plaintiff could not establish that they acted with "deliberate indifference" to his serious medical needs. Doc. 30, p. 7. Defendants pointed out that from January 28, 2008, (when plaintiff was first incarcerated at ACC), to August 14, 2009, smoking at ACC was limited to certain indoor areas. *Id.* On August 15, 2009, ACC prohibited all smoking indoors. *Id.* Defendants argued that plaintiff's allegations regarding ACC'S failure to adequately enforce its smoking policies amounted to a claim of negligence, which is insufficient to establish deliberate indifference. *Id.*

The undersigned recommended that defendants' motion be denied. We applied the two-prong test set forth in *Helling v. McKinney*, 509 U.S. 25 (1993). The report and recommendation found that genuine issues of material fact remained as to the second "subjective" prong, *i.e.* whether defendants' actions or omissions in this case constituted deliberate indifference. Doc. 30, pp. 10–11. Judge Trimble adopted the undersigned's recommendation, and denied summary judgment. Doc. 32.

Having conducted additional discovery, including plaintiff's deposition, defendants now move for summary judgment a second time. Doc. 69. Defendants argue that plaintiff cannot prove that the any of the named defendants or any other ACC employee has ever ignored violations of ACC's smoking policy. Doc. 69, att. 2, p. 2. Therefore, defendants claim that there is no genuine issue of fact as to deliberate indifference. In support of this claim, defendants submit affidavits from Mr. Ed Shirley, Warden Terry Terrell, and Captain Daniel Granger, all of whom state that ACC's policy has been, and continues to be, enforced through the issuance of disciplinary sanctions. Doc. 69, att. 3, pp. 21–43. Furthermore, defendants point out that plaintiff admitted in his deposition that he has seen inmates punished for smoking. Doc. 69, att. 2, p. 5.

Defendants alternatively argue that plaintiff has failed to state a claim against the named defendants because liability is premised solely on their supervisory roles. *Id.* at 6–8. Finally, defendants argue that plaintiff's claims were not properly presented via the prison's administrative grievance procedure and thus his complaint should be dismissed for lack of exhaustion. *Id.* at 8–9.

In response plaintiff admits that he has never seen any of the named defendants ignore violations. *Id.* However, plaintiff submits a list of names of ACC officers who he claims to have either ignored violations of the smoking policy or have violated it themselves. Doc. 82, att. 1, pp. 4–5. He states that he did not provide the names at his deposition due to fear of retaliation. Doc. 82, p. 4. Plaintiff further points to defendants' admission that ACC had been unsuccessful in designating certain housing units as "smoke-free" before it banned smoking outright. *Id.* at 5. Plaintiff states that this admission alone suggests that ACC does not provide a safe environment to inmates. *Id.* Accordingly, plaintiff argues that genuine issues of fact remain as to the enforcement of the smoking policy, making summary judgment inappropriate. *Id.* at 7.

## II. LEGAL STANDARDS

### A. Summary Judgment

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery that show the lack of a genuine issue of

material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion if the movant fails to meet this burden. *Id*.

If the movant satisfies this burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id*. (quoting *Celotex*, 477 U.S. at 323). In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). There is no genuine issue for trial, and thus a grant of summary judgment is warranted, when the record as a whole "could not lead a rational finder of fact to find for the non-moving party . . . ." *Id.*

### B. 42 U.S.C. § 1983

Federal law provides relief against any person who, under the color of state law, acts to deprive another person of any right, privilege, or immunity secured by the Constitution and laws of the United States. 42 U.S.C. § 1983. Thus, the initial question in a § 1983 claim is whether plaintiff has alleged that his constitutional rights have been violated. If no constitutional violation has been alleged, there is no cognizable claim. The plaintiff must then allege that the conduct complained of was committed by a person acting under color of state law, that is, that the defendant was a state actor. *See Hessbrook v. Lennon*, 777 F.2d. 999, 1005 (5th Cir. 1985). Here, because there is no dispute that the defendants are "persons acting under the color of state law," the court need only decide whether a constitutional right was violated.

### III. ANALYSIS

#### A. Enforcement of ACC's Smoking Policy

Plaintiff's complaint alleges that defendants violated the Eighth Amendment by creating a condition of confinement which endangered his health.

In order to state a colorable claim under the Eighth Amendment, an inmate must allege acts or omissions "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).  As announced by the Fifth Circuit, this requires that an inmate "would have to establish 'first, that the deprivation alleged was sufficiently serious (*i.e.,* an official's act or omission must have resulted in the denial of the minimal civilized measure of life's necessities); and second, that the prison official possessed a sufficiently culpable state of mind.'" *Burleson v. Texas Dep't of Criminal Justice,* 393 F.3d 577, 589 (5th Cir. 2004) (quoting *Herman v. Holiday,* 238 F.3d 660, 664 (5th Cir. 2001)).

In *Helling v. McKinney*, the Supreme Court held that prison officials may violate the Eighth Amendment by exposing inmates to excessive levels of ETS.  509 U.S. 25 (1993).  Under *Helling*, a prisoner must show: (1) that he himself is being exposed to high levels of ETS (the objective element); and (2) that prison authorities acted with deliberate indifference to his health and safety (the subjective element).  *Helling*, 509 U.S. at 33–36.  In the court's previous report and recommendation, we found that plaintiff had met his burden of proof as to the objective element.  Doc. 30, pp. 5–6.  Accordingly, the only issue for decision today is whether summary judgment should be granted due to plaintiff's inability to satisfy the subjective element.

In order to succeed on the subjective element, plaintiff must show that prison officials acted with deliberate indifference to his health and safety.  *Helling,* 429 U.S. at 35.  Deliberate indifference can be inferred from the fact that the risk of harm is obvious or that a prison engaged in conduct that would clearly evidence a wanton disregard for prisoners' serious medical needs.  *Hick v. Corrections Corp. of Am.,* 2009 WL 2969768, at *7 (citing *Hope v. Pelzer,* 536 U.S. 730, 737–38 (2002); *Easter v. Powell,* 467 F.3d 459, 464 (5th Cir. 2006)).  Courts should consider the following factors in evaluating deliberate indifference to ETS: "the

adoption of a smoking policy; the administration of that policy; and 'the *realities* of prison administration.'" *Callicutt v. Anderson,* 48 Fed. App'x 916, 916 (5th Cir. 2002) (emphasis in original) (quoting *Helling,* 509 U.S. at 36–37).

In denying defendants' first motion for summary judgment, we concluded that "the plaintiff has presented enough evidence—and . . . that evidence is so similar to other cases that have defeated summary judgment in similar situations—that he deserves at the least an opportunity to present his evidence to a trier of fact." Doc. 30, p. 10. There is no reason to depart from that conclusion now based on the additional evidence submitted to the court.

The deliberate indifference prong of *Helling* is an extremely fact specific inquiry. *Sivori v. Epps* 2009 WL 799463 at *8, n. 13 (S.D. Miss. 2009). Although defendants submit affidavits stating that ACC's smoking policy is enforced through disciplinary sanctions, this "new" evidence is not sufficient to demonstrate that plaintiff's claims are meritless. Similarly, plaintiff's deposition testimony that he has seen offenders written up for smoking indoors does nothing to establish whether defendants acted with deliberate indifference to plaintiff's own medical needs. Based on plaintiff's vehement assertion that he has complained of adverse medical consequences as a result of ETS and that these complaints have largely fallen on deaf ears [doc. 82, p. 3], genuine issues of material fact clearly remain as to *Helling*'s subjective element.

Accordingly, defendants' motion for summary judgment should be **DENIED** to the extent that defendants' claim that there is no genuine issue of fact as to deliberate indifference.

### B. Vicarious Liability

Defendants argue that plaintiff's complaint should be dismissed because plaintiff cannot establish that the named defendants personally violated his constitutional rights. Doc. 69, pp. 6–

8. Defendants point out that that supervisory officials may not be held liable under § 1983 under the doctrine of *respondeat superior*. *See Mouille v. City of Live Oak*, 977 F.2d 924 (5th Cir. 1992). Rather, to be liable under section 1983, a supervisory official must be personally involved in the act causing the alleged constitutional deprivation, or must have implemented a policy so deficient that the policy itself acts as a deprivation. *Id.*; *see also Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 427 (5th Cir. 2006).

The court previously addressed the vicarious liability issue nearly five years ago in conjunction with the court's preliminary review. Doc. 15. In determining that plaintiff's complaint survived initial review, the court nevertheless dismissed plaintiff's claims against James Leblanc (the director of the Louisiana Department of Corrections) because plaintiff failed to "demonstrate either personal involvement or the implementation of alleged unconstitutional policies by this individual." *Id.* at 6–7. The court also dismissed some of plaintiff's claims against Warden Terrell, namely any due-process claims against Terrell for failure to respond to plaintiff's administrative grievances. *Id.* However, the court allowed plaintiff to proceed with the remainder of his claims against Terrell, as well as his claims against Calabrese and Granger.

As to Terrell and Granger, genuine issues of fact remain regarding personal involvement. Plaintiff claims that he informed Terrell via an administrative grievance and Granger via verbal complaints that ACC's smoking policies were not being enforced and that he was suffering health problems as a result but that defendants did nothing to address his complaints. Doc. 82, pp. 1–2. Accordingly, genuine issues of material fact remain as to whether or not these defendants were personally involved in the alleged violations of plaintiff's constitutional rights. *See Murrell v. Chandler*, 277 Fed. App'x 341, 343–44 (5th Cir. 2008). As such, dismissal of Terrell and Granger is not warranted on vicarious liability grounds.

However, with respect to defendant Calabrese, summary judgment should be granted in his favor. Plaintiff cannot demonstrate any personal involvement on Calabrese's part or that Calabrese implemented a constitutionally deficient smoking policy. Plaintiff admitted in his deposition that the only reason he sued Calabrese is "because he's really the supervisor authority over Captain Granger, Warden Terrell and everyone at Allen Correctional Institute." Doc. 69, att. 3, p. 13. Plaintiff also stated that he has never met, spoken with, or written to Calabrese. *Id.* at 12. As such, the undersigned concludes that there is no genuine issue as to Calabrese's lack of personal involvement in the events underlying this lawsuit, and that he is entitled to judgment as a matter of law.

### C. Exhaustion

Finally, defendants argue that plaintiff's complaint should be dismissed because he failed to exhaust his administrative remedies through an approved Administrative Remedy Procedure ("ARP") complaint. Doc. 69, att. 2, p. 8. Defendants concede that plaintiff filed ARP No. ALC-2008-169 and that plaintiff pursued this ARP as far as he was able. *Id.*; *see also* doc. 69, att. 3, pp. 35–38. However, defendants claim that the allegations asserted in plaintiff's complaint were not raised in that ARP. Doc. 69, att. 2, p. 8. Specifically, defendants claim that plaintiff only complained of the fact that ACC had no nonsmoking tiers and that he did not address his complaints over non-enforcement of the smoking policy or defendants' deliberate indifference to his health and safety. *Id*.

A court may dismiss a prisoner's § 1983 suit when it is clear that the inmate has failed to exhaust administrative remedies. *Townzen v. Henderson*, 2011 WL 2414085 at *1 (W.D. La. 2011) (citing *Hicks v. Lingle*, 370 Fed. App'x 497, 498 (5th Cir. 2010); *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007)). Dismissal may also be appropriate when a prisoner does exhaust

an ARP but later files suit on claims not addressed in the ARP. "[T]he primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation." *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004) (citing *Brown v. Sikes*, 212 F.3d 1205, 1207–10 (5th Cir. 2000)). However, "the grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit . . . ." *Johnson*, 385 F.3d at 522.

Here, plaintiff's ARP certainly gave prison officials a fair opportunity to address his ETS concerns. The ARP clearly states that ACC has no non-smoking tiers and that plaintiff complains of adverse health consequences as a result of the pervasive levels of ETS. Doc. 69, att. 3, p. 35. Plaintiff cannot be faulted for failing to address non-enforcement of ACC's no-smoking policy because he filed his ARP long before the policy was even in place. Plaintiff initiated the ARP on February 15, 2008, a full 18 months before the blanket smoking ban went into effect on August 15, 2009. *Id.* at 35–38. To dismiss plaintiff's claims for failure to mention a future policy would be extraordinarily unfair.

However, "a court must interpret the exhaustion requirement in light of its purposes, which include the goal of giving officials 'time and opportunity to address complaints internally.'" *Johnson*, 385 F.3d at 516 (quoting *Porter v. Nussle*, 534 U.S. 516, 525 (2002)). Even though we do not recommend dismissal in this matter on exhaustion grounds, it is appropriate to allow ACC the opportunity to address plaintiff's complaints internally without necessitating judicial intervention. The court will therefore allow plaintiff 30 days in which to file a new ARP, which must present all the claims sought to be litigated at trial.

## IV. CONCLUSION

This case has now been extensively litigated for almost six years. The court has appointed plaintiff a trial attorney, yet trial has been continued numerous times. The court should not dismiss the entire case on summary judgment after such a prolonged period, especially considering that defendants' second motion for summary judgment is largely a repeat of the first. Accordingly,

**IT IS RECOMMENDED** that defendants' motion for summary judgment be **DENIED IN PART AND GRANTED IN PART**, as follows:

1. The motion should be **DENIED** to the extent that defendants claim new evidence establishes that plaintiff's claims are meritless.

2. The motion should be **DENIED** to the extent that defendants claim plaintiff cannot establish personal involvement on behalf of defendants Terrell and Granger. However, the motion should be **GRANTED** as to plaintiff's claims against defendant Calabrese.

3. Finally, the motion should be **DENIED** to the extent that defendants claim plaintiff failed to exhaust his administrative remedies  However, the court will issue a separate order that plaintiff file a new ARP.  Plaintiff will have 30 days in which to file the new ARP and the matter will be **STAYED** pending exhaustion of that ARP.  Once the ARP has been fully exhausted, the matter may resume upon motion by either party.

THUS DONE this 19th day of August, 2014.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE